## JONES & LAUGHLIN STEEL CORPORATION v. UNITED MINE WORKERS OF AMERICA et al.

### No. 9342.

United States Court of Appeals

District of Columbia.

Argued Nov. 12, 1946.

Decided Dec. 16, 1946.

Mr. John C. Bane, Jr., of Pittsburgh, Pa., of the Bar of the State of Pennsylvania, pro hac vice, by special leave of Court, with whom Messrs. John J. Wilson and John C. Gall, both of Washington, D. C., were on the brief, for appellant.

Mr. William E. Leahy, of Washington, D. C., with whom Messrs. Welly K. Hopkins and Harrison Combs, of Washington, D. C., were on the brief, for appellees United Mine Workers and John L. Lewis.

Mr. Harry I. Rand, of Washington, D. C., Attorney, Department of Justice, with whom Messrs. Edward M. Curran, of Washington, D. C., United States Attorney at the time the brief was filed, and J. Francis Hayden, Special Assistant to the Atty. Gen., were on the brief, for appellees J. A. Krug, Secretary of the Interior, and Admiral Ben Moreell, Coal Mines Administrator.

Messrs. Gerhard P. Van Arkel, General Counsel, National Labor Relations Board, and A. Norman Somers, Assistant General Counsel, National Labor Relations Board, both of Washington, D. C., were on the brief for appellees National Labor Relations Board and Paul M. Herzog, John M. Houston and Gerard D. Reilly, the Members thereof.

Before EDGERTON, CLARK, and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a District Court judgment denying appellant's motion for a preliminary injunction, sustaining the motion of appellees United Mine Workers Union and John L. Lewis to dismiss appellant's complaint, and sustaining the motion of appellees J. A. Krug, Secretary of Interior, Admiral Ben Moreell, Coal Mines Administrator, and Paul M. Herzog, John M. Houston, and Gerard D. Reilly, the members of the National Labor Relations Board, for summary judgment.[1] The complaint sought a declaratory judgment that the Union had not legally qualified as the exclusive representative, under a Certificate issued by the Labor Board, of the supervisors in appellant's coal mines, and that appellees Krug and Moreell be enjoined from recognizing or treating the Union as such.

Four bituminous coal mines owned by the appellant were among those of which possession was taken by the United States Government under the President's Executive Order 9728[2] May 21, 1946. In accordance with its provisions, the Secretary of the Interior took possession of the mines and designated Admiral Ben Moreell as Deputy Coal Mines Administrator with full authority to act in his behalf.

Thereafter, the Coal Mines Administrator entered into an agreement with the United Clerical, Technical and Supervisory Employees, hereafter referred to as UCT, a Division of District No. 50, United Mine Workers of America, which in effect recognized it as the exclusive collective bargaining representative of the supervisors at appellant's mines, and which established changes in the terms and conditions of employment for these supervisors. This agreement was limited solely to the period of Government possession. Application

[1] Appellant's petition for an injunction pending appeal was denied by this Court on August 16, 1946 wherein we held that appellant had "failed to make a sufficient showing of injury, or of irreparable injury."

[2] 11 Fed.Reg. 5593.

was thereupon made by the Government to the National Wage Stabilization Board for an order requiring those changes. This order was issued on July 30, 1946 and approved by the President on August 7, 1946.

Appellant does not attack the legality of the Government's action in taking possession of the mines, nor does it challenge the validity of the statutes under which the President assumed his authority and power to act and under which the Secretary of the Interior and Coal Mines Administrator acted. What is contested is the action taken by the Government, through its properly designated officials, in its capacity as operator of the mines. It is contended that the Government should not have proceeded in the manner it did in changing the terms and conditions of employment at the appellant's mines, that the status of exclusive representative can be established only by proceedings before the National Labor Relations Board.

In our view the single issue in the case for our determination is the authority of the Government to establish changes in terms and conditions of employment in mines under its possession. We do not feel compelled to pass on the propriety of the Certification issued by the National Labor Relations Board on May 29, 1946 after due hearing and an election, both conducted prior to the Government's assuming control of the mines, certifying the UCT as the exclusive representative of the mine's supervisors for purposes of collective bargaining, nor on the legal status of the union under that Certification. It is to be noted at the outset that the Government in its action followed strictly the procedure of the statutes under which it operated. Section 3 of the War Labor Disputes Act [3] empowered the President with authority to take possession of the mines. Section 5 provided for the procedure to be followed by the Government Agency operating the mines in securing "A change in

wages or other terms or conditions of employment" in such mines. This authorized approach was for the operating agency to make application to the National War Labor Board (now the National Wage Stabilization Board) for such change. The Board, "after such hearings and investigation as it deems necessary, * * * may order any changes in such wages, or other terms and conditions, which it deems to be fair and reasonable and not in conflict with any Act of Congress or any Executive order issued thereunder. Any such order of the Board shall, upon approval by the President, be complied with by the Government agency operating such * * * mine * * *." The President, by his Executive Order, limited the duration of any such change to the period of Government operation.

■ The facts being as they are, appellant is in no position to complain of the action taken by the Government in its capacity as operator of the mines. The statutory authority of the operating agency to effect the changes made is clear and its legality unchallenged. The record discloses that the procedure outlined was strictly complied with. Aside from this, however, we know of no law, statutory or otherwise, which prohibits an employer from recognizing any union as an exclusive representative without any proceedings before the National Labor Relations Board. The appellant, when it had possession of its mines, could have, independent of any Labor Board Certification, recognized the UCT as such.[4] The Government, in its capacity as operator of the mines, stands on an equal footing so far as the period of Government operation is concerned. Appellant cannot now be heard to protest that the present possessor cannot do what it could have done. Appellant is privileged at any time to withdraw from participation in the program established by the Revised Regulations for the Operation of Coal

---

[3] Act of June 25, 1943, c. 144. 57 Stat. 163, 50 App.U.S.C.A. §§ 1501–1511, amending Sec. 9 of the Selective Training and Service Act of September 16, 1940, c. 720, 54 Stat. 892, 50 App.U.S.C.A. § 309.

[4] As pointed out by Counsel for the

Government appellees, while the United Mine Workers Union has never been so certified by the Labor Board, the appellant freely speaks of that Union as the exclusive representative of the rank and file miners and laborers in its mines.

Mines under Government Control[5] issued under authority of Executive Order 9728 and stand on its constitutional right to just compensation.[6] We hold that the Government's action in recognizing the UCT as the exclusive representative of the supervisors in the mines under its possession was authorized under the statutes and should be upheld in this respect.

■ There is, however, another contention of appellant that merits examination. Appellant asserts that under the existing case law a single union cannot lawfully act as exclusive representative of both rank and file employees and their supervisors in a hazardous industry. The appellant further contends that its position in this regard is augmented by the Mining Laws of Pennsylvania, in which State its mines are located, which laws require certain foremen and fire bosses, some of whom are included in the supervisors represented by the UCT, be provided by the appellant to maintain a close and constant supervision of the work and activities of the miners and to command obedience of safety laws, established by the mining laws, by the rank and file miners, and which laws make these foremen and fire bosses public officers of the State. Appellant says that Union control of these supervisors is incompatible with their duties under the law, especially where the same Union represents the rank and file employees. In support of this argument appellant cites the following cases: N.L.R.B. v. Delaware-New Jersey Ferry Co., 3 Cir., 128 F.2d 130; N.L.R.B. v. Jones & Laughlin Steel Corporation, 6 Cir., 146 F.2d 718; Id., 6 Cir., 154 F.2d 932; N.L.R.B. v. E. C. Atkins Co., 7 Cir., 147 F.2d 730; and N.L.R.B. v. Packard Motor Car Co., 6 Cir., 157 F.2d 80, cert. granted 67 S.Ct. 357. All of these cases were decided on petitions to enforce orders of the National Labor Relations Board where the employer had refused to bargain with the Union certified by the Board to act as representative of certain supervisory employees. The Packard case is particularly interesting, wherein the Court of Appeals for the Sixth Circuit not only reviews the history of the Labor Board's view as to the availability of foremen and supervisory employees as an appropriate unit for the purpose of collective bargaining under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., but also re-states its own view as to the propriety of supervisory employees, in certain classifications, being represented by the same Union under a Labor Board Order as represents the subordinate employees.

As before stated, we are not here dealing with the legal effect to be given a Certification and Order of the National Labor Relations Board. We do, however, assent to the point of view taken by the Board concerning the appellant's contention now being examined as stated in their Decision and Direction of Elections issued prior to their Certification of May 29, 1946: "It should be noted that the numerous safety regulations prescribed in the Commonwealth's mining code are primarily for the protection of the mine personnel working underground and not for the protection of company property. We fail to perceive, therefore, why supervisors represented by an affiliate of the union that is the collective bargaining representative of the rank and file miners, should be less solicitous of the safety of miners who are also fellow union members than non-unionized or independently represented foremen would be. It would appear that membership in the union which represents rank and file members would not interfere with proper enforcement of the safety regulations designed for the protection both of himself and his union associates."

Affirmed.

---

[5] 11 Fed.Reg. 7567.

[6] See Par. 801.25 (d) of the Revised Regulations, supra note 5; Sect. 9 of the Selective Training and Service Act, supra note 3; and the Fifth Amendment to the Constitution.