## NATIONAL LABOR RELATIONS BOARD v. NORTH CAROLINA GRANITE CORP.

### No. 6519.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1953.

Decided Jan. 27, 1953.

Milton Eisenberg, Attorney, National Labor Relations Board, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Frederick U. Reel, Attorney, National Labor Relations Board, Washington, D. C., on brief), for petitioner.

Whiteford S. Blakeney, Charlotte, N. C.. (Folger & Folger; Woltz & Barber, Mount Airy, N. C., and Pierce & Blakeney, Charlotte, N. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PER CURIAM.

This is a petition to enforce an order of the National Labor Relations Board directing the North Carolina Granite Corporation to bargain with a union which the board had certified as bargaining agent of certain of the corporation's employees. The corporation admits the refusal to bargain but denies that the union obtained a majority vote in the election held by the board for the purpose of determining the bargaining agent. The answer to the question thus presented depends upon whether or not one Marvin Wilson, who voted in the election and whose vote is challenged by the union, was entitled to vote therein. The board held

that Wilson was a supervisory employee not entitled to vote under the terms of the Labor Management Relations Act, 29 U.S. C.A. § 147 et seq., and that when his vote was excluded the union had a majority of one vote. The corporation resists the enforcement of the order on the ground that the board's finding as to the supervisory status of Wilson is not sustained by substantial evidence on the record considered as a whole. We think that this position must be sustained.

Wilson was employed by the company as a carpenter and was not paid a salary, as were its foremen, but wages by the hour for the time that he worked. He worked with two other carpenters on a repair squad, repairing the company's buildings and the houses in which its employees lived and was no more than the lead hand of the squad, which operated as did certain other small groups of employees under the immediate direction of Simmons, the company's superintendent, and Christopher, its assistant superintendent. He kept the time of himself and the men who were working with him, but this was because it was not feasible to have a timekeeper traveling around with so small a group and was no evidence of a supervisory status. He had no power to employ or discharge those who were working with him or to reward or discipline them or to exercise any authority over them except such routine authority over minor matters as would ordinarily pertain to the leader of such a squad. It is perfectly clear from the evidence that his position was not that of a representative of management with power to responsibly direct laborers working under him but that of a laborer occupying the position of lead hand or straw boss.

It was never intended by the Labor Management Relations Act that a laborer exercising no more authority than Wilson be denied the benefits of the act or excluded from participating in the choice of a bargaining representative for the employees; and it is worth noting that prior to the election the representative of the union agreed that he was entitled to vote and that, upon the challenge of his vote after the election, the board's regional director issued a report finding that he was eligible. The board's hearing officer, whose report was adopted by the board without discussion, in finding that Wilson was a supervisor stated that this finding was "admittedly, without real conviction". We think it was without any substantial support in the evidence when the record is considered as a whole. The hearing officer seems to have been influenced in his finding by the fact that the burden of proof rested upon those asserting Wilson's right to vote to establish such right (board's appendix p. 35). When it was shown that he was a laborer, however, this right was established in the absence of evidence that he occupied a supervisory status, and, as indicated, there was no substantial evidence to that effect.

The petition for enforcement of the board's order will accordingly be denied and the order will be set aside.

Order set aside.